**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

United States of America,
Plaintiff,
vs.
Hernan Ramirez-Ortega,
Defendant/Movant.

No. CV 24-465-TUC-CKJ
CR 11-2307-TUC-CKJ

ORDER

Pending before the Court is the Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (" Motion") (CV 24-465, Doc. 4; CR 11-2307, Doc. 108)[1] filed by Movant Hernan Ramirez-Ortega ("Ramirez-Ortega"or "Movant").

I. *Factual and Procedural Background*

On May 9, 2013, Ramirez-Ortega entered a plea of guilty to the following offenses pursuant to a consolidated plea agreement:

1. One count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 1152 in this case, as charged by a May 9, 2013, Information in CR 11-2307-TUC-CKJ, the criminal case related to this civil action.

2. One count of abusive sexual contact in violation 18 U.S.C. §§ 2244(a)(1) and 1152 as charged by Indictment in CR 12-1295-TUC-CKJ.

[1]Unless otherwise stated, references to the docket are to the CV 24-465 docket.

Plea Agreement (CR 11-2307, Doc. 47, p. 1). The factual basis set forth in the plea agreement stated:

> **CR-11-2307-TUC-CKJ Count One:**
>
> Sometime in the month of March, 2010 (approximately March 10-11, 2010) I, Hernan Ramirez-Ortega, a Honduran National, was visiting a residence belonging to Nadine Antone, who was a friend of my then-girlfriend Tina Reyes-Tapia. The residence was located on the Gila River Indian Reservation, a federally recognized Indian tribe, near Sacatan, in the District of Arizona. While there, I met the victim S.F. who was an eleven (11) year old niece of Ms. Antone and a member of the Tohono O'Odham Nation, also a federal recognized Indian tribe. I forced S.F. (by over-powering her) to engage in sexual intercourse with me. The result of that encounter was a child that S.F. bore approximately nine (9) months later, who it has since been determined, carries my paternal-genetic DNA match.

Plea Agreement (CR 11-2307, Doc. 47, p. 13). Ramirez-Ortega also entered a plea of guilty in CR 12-1295.

The consolidated plea agreement provided for a sentencing range of 10-40 years imprisonment to be followed by lifetime supervised release and provided, *inter alia*:

> 8. The defendant waives any and all motions, defenses, probable cause determinations, and objections which defendant could assert to the information or indictment or to the Court's entry of judgment against defendant and imposition of sentence upon defendant consistent with this agreement. Defendant further waives any right to appeal the Court's entry of judgment against him, and waives any right to appeal the imposition of sentence upon him under 18 U.S.C. §3742 (sentence appeals) or to collaterally attack the conviction or sentence by means of habeas corpus, coram nobis or petition under 28 U.S.C. §2255, so long as the sentence does not exceed the applicable guideline range.
>
> 9. With respect to the United States Sentencing Guidelines, the defendant understands that they are advisory and must be consulted by the District Court at sentencing. Regardless, the defendant is waiving his right to appeal if the sentence falls within the parameters disclosed in this plea agreement.

Plea Agreement (CR 11-2307, Doc. 47, p. 9).

The change of plea colloquy demonstrates Ramirez-Ortega was competent, had the terms of the plea agreement explained to him, and acting knowingly, voluntarily, and intelligently. Response, Ex. 1, Change of Plea Transcript ("COP Tr.") (Doc. 20, ECF pp. 26-32 of 85). It also demonstrates Ramirez-Ortega was advised, and waived, constitutional rights by entering a plea of guilty. *Id*. at 32-34. Further, the magistrate judge hearing the change of plea answered questions made by Ramirez-Ortega. For example, when Ramirez-

Ortega indicated he did not understand he was giving up the right to confront and question the government's witnesses, the Court explained the right to Ramirez-Ortega, who then stated he understood he was giving up that right. *Id*. at 33. Further, the magistrate judge also explained the waiver of an indictment in that the Information to which Ramirez-Ortega was pleading guilty to reflected the plea agreement of the parties. *Id*. at 34-35.

The magistrate judge also clarified that a defense DNA test strongly supported the government's evidence that Ramirez-Ortega was the father of the victim's child, but defense counsel was waiting for a translation of that information to provide to Ramirez-Ortega. *Id*. at 35-36. Nonetheless, during the colloquy, Ramirez-Ortega agreed that "regardless of whether [he was] the father of the child or not, [he] admit[ted] to having sexual intercourse with the girl in March, 2010[.]" *Id*. at 42. Additionally, the magistrate judge ensured Ramirez-Ortega understood his waiver of appellate and other post-conviction rights, including the right to seek habeas relief. *Id*. at 31.

Lastly, during the change of plea colloquy, Ramirez-Ortega stated he was satisfied with the work of def. counsel on his case. *Id*. at 35.[2]

On February 7, 2014, this matter proceeded to sentencing. At that time, Ramirez-Ortega stated he was not satisfied with the services of def. counsel because he not yet seen the DNA report. Response, Ex. 2, Sentencing Transcript ("SE Tr.) (Doc. 20, ECF p. 50 of 85). The following discussion occurred:

> THE COURT: . . . So Mr. Raptis, I see in the report -- presentence report, paragraph 3, that it was determined that the defendant's DNA was a match to the -- the child of the victim. Is that right? I mean, that's --
>
> MR. RAPTIS: Yes, Your Honor. The Government's criminalist – that was at the conclusion of the Government's criminalist's report. I hired a -- a separate expert from the University of Arizona who reviewed the evidence and found that it was highly -- that it was very, very probable that my -- my client was the father of that child. Mr. --

---

[2]In agreeing he was satisfied with the work of def. counsel, Ramirez-Ortega did question the DNA results. As discussed herein, the magistrate judge and def. counsel clarified the DNA results on the record.

THE COURT: So he agreed with the results of the – that the Government expert obtained?

MR. RAPTIS: Yes, Your Honor.

THE COURT: Okay. And you shared that information with your client?

MR. RAPTIS: Yes. Now, he's referring to a -- he wants a copy of the Government's criminalist's report.

THE COURT: Uh-huh.

MR. RAPTIS: He wants a copy of that, and what he's referring to is that I negotiated with the Government through Mr. Schmit on a number of occasions, and Mr. Schmit was willing to -- for my client to review any part at length of the criminalist's report and conclusions, which are very, very technical. Frankly I don't understand much of what's in the report, which is why I had to rely on my -- an expert that I hired.

THE COURT: Sure.

MR. RAPTIS: But there was a separate reason for the Government not giving my client a copy, which is what he wanted. He wanted an actual copy of the report, and Mr. Schmit clarified that it is only with the Court's order that his office will -- will release a copy of such information because it has sensitive information, such as information identifying victims, and -- and that is a separate reason why he could not allow my client to have a copy of that.

My client wants me to ask Your Honor to order the Government to release a copy of that same report though.

THE COURT: All right. Thank you, Mr. Raptis.

All right. So Mr. Ramirez-Ortega, do you have any other -- were you able to communicate and work with Mr. Raptis in your case?

THE DEFENDANT: Well, yes, because that's what I'm asking. I just want to be sure that I'm being sentenced for something that is real, that is true, and not to be sentenced for something that is not my fault, that I'm -- if I'm not the father of the baby.

*Id*. at 50-52. In other words, except for the lack of receiving the report, Ramirez-Ortega indicated he was satisfied with the assistance of counsel.

Ramirez-Ortega was sentenced to the custody of the Bureau of Prisons ("BOP") for a term of three hundred (300) months, to be followed by a supervised release term of two hundred forty (240) months. On that same date, Ramirez-Ortega was sentenced in CR 12-1295 to the custody of BOP for a term of twenty-four (24) months, to run consecutively to the sentenced imposed in CR 11-2307, with a two hundred forty (240) month term of

supervised release, to run concurrently with the sentence imposed in CR 11-2307. The judgments of conviction were entered on February 7, 2014.

On September 17, 2024, Ramirez-Ortega filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 1); he filed his Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 4) on November 12, 2024. Ramirez-Ortega also filed a Affirmation (Doc. 6). Counsel for Ramirez-Ortega during pre-plea, plea, and sentencing proceedings has filed an Affidavit (Doc. 16). The United States of America ("Respondent" or "the government") filed a response on June 11, 2025 (Doc. 20). No reply has been filed.

II. *28 U.S.C. § 2255*

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move a sentencing court to vacate, set aside, or correct his or her sentence on the grounds that (I) the sentence violates the U.S. Constitution or other federal law; (ii) the court lacked jurisdiction to impose the sentence; (iii) the sentence exceeds the maximum authorized by law; or (iv) the sentence is otherwise subject to collateral attack. As summarized by the Court in its December 6, 2024, Order, Ramirez-Ortega claims:

> (1) The United States, "in excess of power," arrested Movant and removed him from his home "by force," for the purpose of "depriving [him] of [his] personal liberty, life, privacy, protection against cruel and unusual punishment, protection against involuntary servitude, and to testify against [him]self," under an "illegal process, to wit, a general criminal process . . . issued without jurisdiction, that is, without oath or affirmation . . . in support thereof," in violation of his rights under the Fourth, Fifth, Eighth, and Thirteenth Amendments.
>
> (2) This Court, "in excess of jurisdiction," arraigned, convicted, sentenced, and committed Movant to federal custody, for the purpose of "depriving [him] of [his] personal liberty, life, privacy, protection against cruel and unusual punishment, and involuntary servitude," under an "illegal process, to wit, a general criminal process . . . issued without jurisdiction, that is, without oath or affirmation . . . in support thereof," in violation of his rights under the Fourth, Fifth, Eighth, and Thirteenth Amendments.
>
> (3) Movant was deprived of "competent and effective assistance of counsel," in violation of his rights under the Fourth, Fifth, and Sixth Amendments.

> (4) The United States "knowingly and willfully issued an immigration detainer and removal order" for the purpose of "removing [Movant] from the United States and to deprive [him] of [his] personal liberty, life, and privacy, without due process, under the pretext of a conviction in the United States District Court," in violation of his rights and under the Fourth and Fifth Amendments.

December 16, 2024 Order (Doc. 5, pp. 1-2).

Where a claim involves alleged occurrences outside the record, a hearing is not required if the allegations "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.1985), *quoting United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.1984); *Smith v. United States*, 884 F.2d 582 (9th Cir. 1989) (hearing not required for 2255 claims of ineffective assistance of counsel and prosecutorial misconduct where the motion, files and records of the case conclusively show a prisoner is entitled to no relief). Where the allegations of a movant contradict statements made in court, credibility must be assessed. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). "'Solemn declarations in open court carry a strong presumption of verity[.]'" *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir.), *cert. denied*, 484 U.S. 832 (1987), *citations omitted*; *see also Creech v. Richardson*, 59 F.4th 372, 393 (9th Cir.), *cert. denied*, 144 S. Ct. 291 (2023), *citations omitted*. An evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988).[3] Also, courts may expand the record with other documentary evidence, use their own notes and recollections, and use common sense. *Shah*, 878 F.2d at 1159; *see also United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988). The Court, therefore, will properly consider the complete record of what occurred in the criminal case. Because the files and records conclusively show Ramirez-Ortega is not entitled to relief, the Court finds an evidentiary hearing is not required.

---

[3]However, a hearing may be required "in spite of 'the barrier of the plea or sentencing procedure record [which], although imposing, is not invariably insurmountable.'" *Shah*, 878 F.2d at 1158, *quoting Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

III. *Waiver of Right to File 28 U.S.C. § 2255 Petition*

A waiver generally will be enforced if the agreement, by its terms, expressly waives the right and the waiver is knowingly and voluntarily made. *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (A waiver is enforceable if "the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised" and "the waiver is knowingly and voluntarily made."), *internal quotation marks omitted*; *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Vences*, 169 F.3d 611 (9th Cir. 1999)(sentence was not illegal where it was authorized by the judgment of conviction and was not in excess of the statutory penalty). In this case, the plea agreement provided that Ramirez-Ortega waived not only all motions, defenses, probable cause determinations, and objections which defendant could assert to the information or indictment, but also the right to file a petition under 28 U.S.C. §2255 as long as the sentence does not exceed the applicable guideline range. Plea Agreement (CR 11-2307, Doc. 47, p. 9). Ramirez-Ortega's sentence does not exceed the applicable guideline range; further, his sentence is consistent with the plea agreement. Generally speaking, therefore, Ramirez-Ortega has waived his right to bring the § 2255 motion.

However, the Court finds Ramirez-Ortega has not waived the right to assert an ineffective assistance of counsel claim in the § 2255 motion. *See United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (where defendant alleges ineffective assistance of counsel while entering plea agreement, the claim may attack the knowing and voluntary nature of the plea agreement); *Washington v. Lambert*, 422 F.3d 864, 870-71 (9th Cir. 2005) (waiver of the right to file a § 2255 motion made pursuant to a negotiated plea agreement is enforceable except with respect to a claim that the waiver or the plea was involuntary or the result of ineffective assistance of counsel). Further, Ramirez-Ortega has not waived the right to assert a lack of jurisdiction over the subject matter. *United States v. Heath*, 509 F.2d 16, 19 (9th Cir. 1974) (lack of subject matter jurisdiction may not be waived and may be raised at any time).

IV. *Limitations Period of One Year and Equitable Tolling*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for 28 U.S.C. § 2255 motions. *See* 28 U.S.C. § 2255; *United States v. Skurdal*, 341 F.3d 921 (9th Cir. 2003). The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*United States v. Monreal*, 301 F.3d 1127, 1131 n.** (9th Cir. 2002), *quoting* 28 U.S.C. § 2255.

A judgment of conviction becomes final at "the end of the time available for direct appeal." *United States v. Garcia*, 210 F.3d 1058, 1061, n.4 (9th Cir. 2000); *see also Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987). The applicable rule in effect when Ramirez-Ortega's judgment of conviction was entered stated, "In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed[.]" Fed.R.App.P. 4(b)(1)(A) (eff. Dec. 1, 2011). Ramirez-Ortega's judgments of conviction were entered on February 7, 2014. The deadline for filing any notice of appeal, therefore, was February 21, 2014.

The one year statute of limitations expired on February 21, 2015. If the statute of limitations cannot be equitably tolled, Ramirez-Ortega's § 2255 habeas is untimely and must be denied.

The Ninth Circuit has held that the statute of limitations may be equitably tolled in a 28 U.S.C. § 2255 action if "(1) the petitioner has diligently pursued his rights, and (2) extraordinary circumstances exist." *United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045 (9th Cir. 2010), *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also United States*

*v. Battles*, 362 F.3d 1195, 1196-97 (9th Cir. 2004). Few cases justify equitable tolling, *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005), and "the threshold necessary to trigger equitable tolling . . . is very high." *Aguirre-Ganceda*, *quoting Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006). Moreover, the burden to establish the requirements of equitable tolling is on a petitioner. *Pace*, 544 U.S. at 418; *see also Holland v. Florida*, 560 U.S. 631 (2010) (petitioner must establish he is entitled to equitable tolling in § 2254 action). Indeed, "[e]quitable tolling is not even a possibility until a petitioner submits proof that external forces, and not a petitioner's lack of diligence, accounted for the failure to file a timely petition." *Smith v. Ratelle*, 323 F.3d 813, 821 (9th Cir. 2003); *see also Waldron-Ramsey v. Pacholke*, 556 F.3d 1008. 1011 (9th Cir. 2009), *quoting Harris v. Carter*, 515 F.3d 1051, 1054 (9th Cir. 2008) (applying "the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling'").[4]

Ramirez-Ortega asserts his Motion is timely because his conviction and sentence is void because Respondent has unlawfully restrained his personal liberty life and privacy, he was unable to timely investigate facts to present his claims based on the restraint of his liberty, and he was unable to timely investigate facts to present his claims based on his incompetence in the law and the lack of competent counsel. Ramirez-Ortega asserts he discovered supporting facts in January 2024:

> after years of acquired knowledge and understanding through diligent pursuit of [his] rights, that is, by studying the U.S. Constitution, to understand [his] right; conducting legal research from the law library provided by Respondent and reviewing the record with the help of an inmate.

Motion (Doc. 4, ECF p. 10).

---

[4]For the purpose of equitable tolling, 28 U.S.C. §§ 2254 and 2255 are treated similarly. *Battles*, 362 F.3d at 1196-97.

As to Ramirez-Ortega's claims of equitable tolling based on the alleged unlawful restraint, this assumes the merit of Ramirez-Ortega's habeas claims as a basis for equitable tolling. However, this does not show that Ramirez-Ortega had diligently pursued his rights or presented extraordinary circumstances.

Moreover, as to Ramirez-Ortega's assertion his incompetence in the law and ineffective assistance of counsel provide a basis for equitable tolling, another court has stated:

> The Ninth Circuit has joined other circuits in holding that a pro se movant's lack of legal sophistication and inability to correctly calculate a limitations period is not an extraordinary circumstance warranting equitable tolling. *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Thus, a mistaken assumption of when the statute of limitations period ran, whether made by an attorney, a non-attorney, or Movant himself does not provide grounds for equitable tolling. In addition, given all of the problems that Movant himself describes with obtaining timely and quality work from [counsel], Movant's asserted reliance on [counsel] for an accurate statute of limitations expiration date does not provide grounds for equitable tolling.

*United States v. Brewer*, No. CR12192702PHXNVW, 2019 WL 5227860, at *6 (D. Ariz. Sept. 25, 2019), report and recommendation adopted, No. CR120192702PHXNVW, 2019 WL 5213334 (D. Ariz. Oct. 16, 2019). Ramirez-Ortega's lack of legal sophistication does not warrant equitable tolling.

Moreover, as to Ramirez-Ortega's assertion his Motion is timely based on the lack of competent counsel, the Ninth Circuit has stated:

> To qualify for equitable tolling on account of ineffective assistance of counsel, a petitioner must demonstrate (a) that he was prevented from timely filing his motion due to prior counsel's ineffectiveness; (b) that he demonstrated due diligence in discovering counsel's fraud or error; and (c) that he complied with the procedural requirements[.]

*Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011) (discussing equitable tolling in context of immigration proceedings). It is not clear if Ramirez-Ortega is referring to the attorney who represented him through his plea, sentencing and conviction ("def. counsel") or the attorney who represented him in presenting a request for compassionate release ("comp. counsel"). Def counsel's representation of Ramirez-Ortega ended in 2014 and comp. counsel's representation ended in 2021. Ramirez-Ortega does not clarify what alleged

deficiencies explain either a three or ten year delay in filing the instant § 2255 motion. Or how, even if there was some deficient conduct, his conduct demonstrates due diligence in delaying years before filing the motion.

Indeed, since the February 7, 2014, entry of judgment in this case, Ramirez-Ortega filed three requests for release, one with the assistance of counsel (CR 11-2307, Docs. 79, 94, 102), without any indication of the claims presented in the instant motion. The Court finds Ramirez-Ortega has not diligently pursued his rights nor do extraordinary circumstances exist to warrant equitable tolling.

V. *Conduct of the Government Allegedly Without Power or Jurisdiction*

Although these claims are untimely and the claim the government acted without power are waived, the Court will briefly address them. Ramirez-Ortega alleges the government, without power or jurisdiction, arrested and removed him from his home by force, illegally prosecuted him, and have subjected him to a cruel and unusual punishment. Ramirez-Ortega alleges this deprived him of his constitutional rights under the Fourth, Fifth, Eighth, and Thirteenth Amendments. As to Ramirez-Ortega's claim the government acted without power or authority, a magistrate judge issued an arrest warrant (CR 11-2307, Doc. 2) and it was properly returned and executed on February 25, 2012 (CR 11-2307, Doc. 4). Further, Ramirez-Ortega has failed to present any basis to conclude any procedural defects occurred in this case. For example, the prosecution of Ramirez-Ortega included a timely scheduled initial appearance, a detention hearing, change of plea proceedings and sentencing. Moreover, contrary to Ramirez-Ortega's claim the magistrate judge "entered judgment" prior to appointing counsel, Ramirez-Ortega Affirmation (Doc. 6, p. 3), a review of the February 29, 2012, audio recording indicates judgment was not entered and procedural requirements were complied with. Additionally, by entering a plea of guilty, Ramirez-Ortega has waived the right to contest "all nonjurisdictional antecedent rulings and cures all antecedent

constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005).

Ramirez-Ortega also asserts he entered his plea of guilty while "under duress of imprisonment[.]" Ramirez-Ortega Affirmation (Doc. 6, p. 3). During the change of plea hearing, Ramirez-Ortega stated he had not had any drugs, prescription medication, or alcoholic beverages in the last 48 hours, he had never been treated for any mental or emotional condition, def. counsel had explained the plea agreement, def. counsel had answered his questions about the plea agreement, and he understood and agreed to be bound by the terms and conditions of the plea agreement. COP Tr. (Doc. 20, ECF pp. 26-28 of 85). Ramirez-Ortega also stated no one had made promises to him that were not contained in the plea agreement, no one had forced you or threatened him to come to court and make a deal, he was voluntarily pleading guilty and he was pleading guilty because he was guilty. *Id*. at 28. Ramirez-Ortega further stated he understood the potential penalties he faced, as well as a sentencing range agreed upon by the parties. *Id*. at 29-30. After stating he understood the rights he was giving up by entering a plea of guilty, Ramirez-Ortega stated he wanted to proceed with the change of plea. *Id*. at 36. Further, def. counsel stated Ramirez-Ortega recalled information from prior discussions, understood the consequences, and was competent to enter a plea. *Id*. at 27.

Ramirez-Ortega's claim he entered his guilty plea while under duress of imprisonment is contradicted by the statements he made in court and is not credible. The statements made in open court carry a strong presumption of truth. *Rubalcaba*, 811 F.2d at 494. Moreover, Ramirez-Ortega not only failed to allege duress during the pre-judgment proceedings, but he also failed to make these allegations in post-judgment proceedings. His earlier silence refutes his present allegations. *Watts*, 841 F.2d at 278. The documents filed in this case, as well as the record from the criminal case, conclusively show Ramirez-Ortega is not entitled to relief based on this claim. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962)

("the statute does not strip the district courts of all discretion to exercise their common sense").

Additionally, for a court to be "without jurisdiction to impose [a] sentence," 28 U.S.C. §2255(a), a court cannot have the "statutory or constitutional power to adjudicate the case. *United States v. Cotton*, 535 U.S. 625, 630 (2002), *quoting Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998). A lack of jurisdiction over the subject matter is not subject to waiver and may be raised at any time. *United States v. Heath*, 509 F.2d 16, 19 (9th Cir. 1974). In this case, the offenses occurred on the Gila River Indian Reservation, the victim was a member of the Tohono O'Odham Nation, and Ramirez-Ortega is not a member of a federally recognized Indian tribe. Ramirez-Ortega pleaded guilty to aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 1152. This Court had jurisdiction to adjudicate this case. *United States v. Webster*, 797 F.3d 531, 537 (8th Cir. 2015) (jurisdiction present to support conviction pursuant to18 U.S.C. §§ 2241(a) and 1152 of non-Indian); *see also United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2005) (discussing federal jurisdiction of crimes committed by Indians and non-Indians in Indian Country); *United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir.1983).

VI. *Assistance of Counsel*

Ineffective assistance of counsel constitutes a violation of the Sixth Amendment right to counsel, and thus, if established, is grounds for relief under § 2255. *See e.g. United States v. Houtchens*, 926 F.2d 823, 828 (9th Cir. 1991) (section 2255 motion is the customary procedure for challenging the effectiveness of counsel under the Sixth Amendment). Further, a "'decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence[.]'" *United States v. Ruiz*, 241 F.3d 1157, 1165 (9th Cir. 2001), *reversed on other grounds, quoting DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000).

To prevail on a claim of ineffective assistance of counsel, Ramirez-Ortega must satisfy a two prong test, demonstrating: (1) deficient performance, such that counsel's actions were outside the wide range of professionally competent assistance, and (2) Ramirez-Ortega was prejudiced by reason of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 686-90 (1984). Additionally, a defendant's Sixth Amendment right to counsel "extends to the plea bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "A claim of ineffective assistance used to attack the validity of a guilty plea may be sustained where the petitioner establishes that the ineffective performance 'affected the outcome of the plea process . . . [such] that absent the erroneous advice, [he] would have insisted on going to trial.'" *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Lastly, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Since a petitioner must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ramirez-Ortega asserts he was deprived of competent and effective assistance of counsel. Specifically, he asserts def. counsel failed to challenge the constitutionality of his detention, failed to opposed his forcible arraignment/illegal process, and advised him to plead to an offense for which the Court did not have jurisdiction. The affidavit of def. counsel states:

> As to the explicit grounds for my incompetence there were no issues under the Constitution regarding his detention, as Petitioner alleges. Furthermore, he was not forcibly arraigned as he alleges, nor was there a lack of jurisdiction.

Affidavit (Doc. 16, p. 1). Indeed, as summarized by the Court *supra*, an arrest warrant was issued by a magistrate judge and the arrest warrant was properly returned and executed. Further, a review of audio recordings of the February 27, 2012 (initial appearance), and

February 29, 2012 (arraignment and detention), hearings demonstrate Ramirez-Ortega was assisted by an interpreter and the hearings proceeded appropriately and lawfully. Significantly, when asked by the magistrate judge during the initial appearance if he had any questions, Ramirez-Ortega did not answer affirmatively.[5] Further, the attention to detail during the arraignment is exhibited by the attorney informing the Court of the incorrect name on the indictment and arrest warrant.[6]

Def. counsel's affidavit also addressed his actions on behalf of Ramirez-Ortega and discussions he had with Ramirez-Ortega:

> During my representation of Petitioner, I conducted a thorough review and examination of discovery materials provided by the prosecution, including but not limited to, Petitioner's, post Miranda, inculpatory statements to law enforcement, and the Scientific Examination Report of D.N.A. evidence concluding that the Petitioner was the father of the minor victim' s child. I met with the Petitioner on multiple occasions to discuss the disclosure, facts, legal strategies. potential outcomes, and made clear that he had the right to proceed to trial. I investigated leads that included retaining a separate D.N.A. expert to review the government's D.N.A. evidence.
>
> Further, I discussed the evidence, potential litigation and trial with my Supervisor at the Federal Defender' s Office in Tucson.
>
> I concluded the evidence to he used al trial was strong,. Only after reviewing the evidence many times and discussing potential litigation. trial and my opinion of the strength of the evidence with the Petitioner did the Petitioner decide to plead guilty.

Affidavit (Doc. 16, p. 1).

The record corroborates def. counsel's actions. For example, def. counsel's statements during the change of plea hearing demonstrate the communication between def. counsel and Ramirez-Ortega:

> THE COURT: All right. Mr. Raptis, has your client's lack of education caused any problems in communicating with him?
>
> MR. RAPTIS: No, your Honor. I think he has a good memory. He's always recalled information I've given him on prior consultations. He understands the consequences. He asked appropriate questions given the nature of the case and the consequences between going to trial and taking a plea agreement. He is a -- unschooled, but he is,

---

[5] The initial appearance was conducted with other charged individuals. The magistrate judge told the members of the group multiple times to stand if they had any questions.

[6] Another Asst. Federal Public Defender covered this hearing for def. counsel.

> I'd say, very capable -- very capable of understanding the nature of this case that's pending against him.

COP Tr. (Doc. 20, ECF pp. 26-27 of 85). Further, during both the change of plea and sentencing hearings, def. counsel's efforts regarding the DNA test results and the criminalist's report were discussed, exhibiting def. counsel's efforts and multiple discussions between def. counsel and Ramirez-Ortega. Further, def. counsel competently argued on behalf of his client at sentencing. For example, this Court did not consider the psychosexual examination report following the objection and argument of def. counsel. Additionally, while def. counsel acknowledged there may be other types of force used in the offense, he effectively argued the offense occurred without physical force.

Additionally, Ramirez-Ortega has not shown that the result would have been different if def. counsel's alleged errors had not occurred. Rather, if def. counsel had contested Ramirez-Ortega's arrest, arraignment, or detention, such efforts would have failed as there is no basis for relief on this grounds. Similarly, as this Court had jurisdiction over this matter, any effort by def. counsel to contest the jurisdiction would not have been successful. The record demonstrates def. counsel obtained a favorable plea agreement for Ramirez-Ortega after an investigation that indicated the evidence against Ramirez-Ortega was strong. Lastly, Ramirez-Ortega has not shown that, absent the alleged deficient assistance, he "'would have insisted on going to trial.'" *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Court finds Ramirez-Ortega has not been prejudiced by any alleged deficient conduct of def. counsel.

VII. *Immigration Detainer and Removal*

Ramirez-Ortega asserts the immigration detainer and removal order against him have been issued without due process. As a court of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co*, 511 U.S. 375, 377 (1994) (federal courts are courts of limited jurisdiction and "may adjudicate only those cases authorized by the Constitution and by Congress"), this Court does not have jurisdiction to consider this claims. *Singh v. Gonzales*, 499 F.3d 969,

977 (9th Cir. 2007) ("the REAL ID Act expressly eliminated habeas review over all final orders of removal, but restored to the appellate courts jurisdiction over 'constitutional claims or questions of law' in all cases—criminal and non-criminal").

VIII. *Conclusion*

Ramirez-Ortega's untimely request does not present a basis for relief. Ramirez-Ortega's allegations, "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Marrow*, 772 F.2d at 526. The record clearly demonstrates constitutional protections and procedural safeguards were followed, i.e., def. counsel was not deficient for failing to pursue such spurious claims, as well as Ramirez-Ortega having voluntarily entered a plea of guilty without duress. The record also demonstrates def. counsel's efforts in providing thorough representation to Ramirez-Ortega, which is confirmed by Ramirez-Ortega's own statements regarding his satisfaction, with clarification, of def. counsel. Considering the allegations, the record, including def. counsel's affidavit, the Court finds Ramirez-Ortega is not entitled to relief.

IX. *Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court[,]" or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Motion is brought pursuant to 28 U.S.C. § 2255. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district

court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would not find it debatable whether the Motion states a valid claim of the denial of a constitutional right. Further, the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural rulings. A COA shall not issue as to Ramirez-Ortega's claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1. The Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (" Motion") (CV 24-465, Doc. 4; CR 11-2307, Doc. 108) is DENIED.

2. Cause No. CV 24-465 is DISMISSED.

3. The Clerk of the Court shall enter judgment and shall then close its file in Cause No. CV 24-465.

4. A Certificate of Appealability shall not issue in this case.

DATED this 9th day of October, 2025.

Cindy K. Jorgenson
United States District Judge